Good morning. I'm Michael McCabe. I represent the appellant Dorian Leniar. The issue, of course, in this case is the correctness of the district court's ruling declining to compel the government to make a motion for a sentence less than the minimum mandatory penalty or for downward departure. Now, I think the interesting thing about the government's efforts to justify its position in here is the extent to which they flip-flop on major issues. The first flip-flop concerns the validity and exclusivity of the language in the original plea agreement, which indicates that it is the only agreement between the parties and can only be modified by a subsequent written agreement or codicil. That was the position initially advanced by the government in its response to pleadings to the motions in the district court. When it came time for the evidentiary hearing, however, the government's position did a 180. In the testimony of AUSA Todd Robinson, representing the government in this case, he conceded that there was indeed an oral understanding. But the oral understanding, according to him and his testimony, was that the appellant would be given a front-end benefit of the government foregoing the filing of his prior drug conviction, which would have doubled the minimum mandatory penalty to 20 years. And in return, his understanding and his statement as to the nature of this agreement was that the appellant and his counsel agreed to provide post-plea cooperation, quote, within reason. And when pressed as to what within reason meant, Mr. Robinson responded that within reason meant anything which the appellant had mentioned during his pre-plea debriefings with the government. So the government says now that there was an oral understanding, and the dispute here is what was the nature of the oral understanding. The government, nevertheless, in spite of this flip-flop in the district court, maintains that it never agreed or promised in any way whatsoever to reward appellant's continued cooperation by, no matter how extensive or valuable, with a motion for a sentence less than the minimum mandatory penalty under 3553E, or a motion and or a motion for downward departure under Section 5K1.1. Well, the statements, the admitted statements made by Agent Brown and AUSA Robinson to appellant and his counsel during the long period between the entry of the plea and the scheduled sentencing belies this contention. Brown admitted during the evidentiary hearing on the motion to withdraw or to revoke the plea, which was granted by the district court before I entered the picture. He testified that the apprehension of Raymond Canty, which was engineered by appellant, was of great value to the government, constituted substantial cooperation, and indicated to the appellant and admitted on the witness stand that he told the appellant that he would bring this matter to the attention of the district court at the time of sentencing. If, as the government maintains, there never was any possibility that appellant would be rewarded for his cooperation by a motion for a sentence less than the minimum mandatory penalty or a downward departure, that statement to him makes absolutely no sense. Similarly, Mr. Robinson, representing the government on this appeal, admitted that when appellant's counsel at the time, Mr. Hall, inquired of him as to the value of certain information which had been provided, of which he had knowledge through his client, to the government, Mr. Robinson agreed to look into it and to get back to him. Now, if indeed, as the government maintains, there was no possibility under any circumstances of Mr. Lanier receiving any further benefit, that statement makes absolutely no sense. And when challenged on it, Mr. Robinson couldn't come up with an answer which really made any sense. His answer was something along the lines of, well, I wanted to preserve this working relationship which I had with defense counsel, Mr. Hall, and I have no way of fathoming what use defense counsel would make of this information. Well, if you are hamstrung by the minimum mandatory penalty, there is no other use that can be made of this. Let me ask you a question. The government argues that the benefit that Lanier got from the plea agreement was up front, that they agreed in that, you know, whatever he did subsequently, they agreed that they wouldn't give notice to the court of the prior conviction, which could have doubled his sentence. Correct. Well, how do you respond to that? That's actually not even in the plea agreement. No, it's not in the plea agreement. And this is part of the flip-flop where they say the plea agreement is the entire agreement of the parties, except that when we say that there is an oral understanding, well, that's the agreement of the parties. But, in fact, the contract law, oral contracts, you know, can be valid. And in this one, in fact, the contract was performed because they didn't file the notice of the prior conviction. Well, the whole question is, was that the contract? And, of course, the district court found that it was, although noting that in all of her experience, she had never seen a case like this where the defendant is given a front-end benefit and then expected to continue to cooperate in order to earn what the government has already given him and cannot take away. It's ridiculous. And my point is that the agreement, the oral agreement of the parties had to encompass more than that based upon the statements made to Appellant and his counsel by the government agents, including Mr. Robinson, because otherwise it makes absolutely no sense. These statements were made to him by Agent Brown with an effort, in an effort to, an obvious effort to encourage him to continue to cooperate. Under the plea agreement, could the government have gone ahead and introduced evidence of the prior conviction? No. No. And as a matter of fact, it precluded. And why not? Well, it precluded by statute from doing so. Under Section 851, the information giving notice of the prior conviction must be filed before the plea is entered. So they were toast. What is it in your view that makes what the district court did here clear error? Well, I think, first of all, it doesn't go to the point of clear error. I think that this is more akin to a mixed question of fact and law. Well, you're trying to upset a written plea agreement or you're trying to upset the findings of the district court that there was no ancillary oral agreement to your client's benefit That, to me, comes into clear error. That's a fact finding by the district court based on a record. Well, I think that it is a mixed question of fact and law. Not to find out that there was no agreement. That's the first issue. There is no agreement. Then you might look at what's the conclusion from that or what would be the conclusion if there was an agreement. But the presence or absence of an agreement, to me, is an issue of fact.  I think that the presence or absence of an agreement. Well, I assume I'm right because to get one vote here, you've got to convince me. What is it that makes this clear error? Clear error in that the district court did not adequately take into account the representations made to Appellant and his counsel during the period of time after the plea and prior to sentencing in which they were encouraging him to cooperate with veiled promises of benefit. In the case of Agent Brown, those being that this would be brought to the attention of the court at the time of sentencing, clearly implying that there was a benefit which was going to be which was in the process of being earned. Now, if, in fact, that was not the case, well, then you look at the flip side of this. The government, through its agents, deceived both Appellant and his counsel. And I don't think that there's any question but that that type of conduct offends due process. Well, the hurdle you have with me is that there's no provision in the plea agreement that actually provides that the government will make a motion based on substantial assistance. But by the same token, Your Honor, there is no provision in the plea agreement reflecting the terms of the oral understanding as outlined by Mr. Robinson, that the benefit was on the front end and, therefore, and that everything that went, no matter how beneficial it was, couldn't possibly result in any greater benefit to the defendant when they are giving him conflicting signals all along as to that particular issue. They used him, abused him, deceived him. And that's what cries out from this record. The second, I guess I'm just about out of time, so I'll save my 18 seconds for rebuttal. Thank you. Good morning. Timothy Coggins, United States. I think the Court hit right on it. This particular benefit was received up front. It wasn't really a term of the contract, of the plea agreement, because there was nothing the government could do to enforce it at that point. How can that be, that it was received up front? Just as Mr. McCabe indicated, because there is no way that the government could have enforced it once the plea went forward, having not filed the enhancement, there's nothing the government could do. So what was the reason for encouraging this additional cooperation? He didn't have to do anything. He didn't have to do anything. You're right. Well, the indication from Agent Brown was, you know, he'll help us out. We'll do what we can to bring this to the attention of the Court. Same with Attorney Hall. Was all of this just a sham? It wasn't a sham, Your Honor. It was a situation in which the AUSA made a determination, we'll give you the benefit up front, and we hope we get something in return. And in return, we don't disagree with the two areas that were described by Mr. McCabe, got a benefit of the rest. Well, I suppose he didn't give any additional aid at all. The government would have been out of luck. There was nothing to enforce at that point in time. Well, that's my point. You have a plea agreement in which there's nothing further that the government can do. So what's the motivation for the defendant here to be cooperative at all? There is no motivation other than the fact that he received a generous benefit, and as Mr. Robinson pointed out in his appellate work, he was relying on the representations of Pat Hall, who was the attorney of Mr. Lanier, as they went into those proffer sessions prior to entering the plea. I think what's most compelling about this is the fact that Pat Hall was the attorney of Mr. Lanier. He was the attorney of Mr. Lanier.   He was the attorney of Mr. Robinson. His testimony was that the government indicated that they would give further consideration to those things that the defendant did not have to do at all. Mr. Hall was certainly hoping that the government would make a 5K motion. There's no doubt about it. He voiced that in his declaration and even in his testimony. But the reality is that he said also very clearly, as did Mr. Robinson, there was never a promise to bring a 5K, and that was the negotiated pre-plea condition that they entered into. What's part and parcel of the plea agreement is that there is no term which requires the government to bring a motion for substantial assistance. Yeah. It seems to me the government is misleading him, frankly. Then the court is completely discounting any benefit that the defendant has received. No, not discounting any benefit. The plea agreement was reached. It didn't say anything about future cooperation. So now Brown and Hall both are under the impression that if he does something further, that the government is going to give him some benefit. Well, the reverse or the inside out of that question is what benefit did the government get prior to deciding not to file enhancement? And the government says nothing. That's what they reached the program over. We were hoping for. We were hoping for this. And I think the answer is that in the best of all worlds, it certainly would have been the kind of term you would have liked to have had included into it, that there will be no additional substantial assistance departure. Or that there will be additional. That there will be if it was to be. Yeah. But there wouldn't have been here, because in this case, in this case, he got a 50 percent reduction in the potential term he was looking at. Well, he struck a good plea agreement. He did. He did. And the government held him to his bargain. But that was not the bargain. That was the bargain, Your Honor. The term. Where do we find that? In the plea agreement, it says the government will not make, will make a recommendation at sentencing for the minimum mandatory sentence. It says it in the plea agreement. All right. But that doesn't say anything about the fact that they've given up introducing anything about a prior conviction? I agree. It doesn't say anything. So it's not a term. Because the government has no enforceable right once the defendant has entered his plea. Right. So it's not necessary to put it in the plea agreement. It's a hope. I'm not suggesting that, in fact, it's the best approach. I think the Court correctly pointed out, in the normal circumstance, the government waits until somebody cooperates fully and then makes a determination. That wasn't the case here. But there was a benefit afforded the defendant. There was a benefit. That's true. But then after that, after that bargain was completed and the government could do nothing further, then there was this implied representation that if you do something further for us, we're going to give you some further breaks. And that just bothers me. Now, it wasn't reduced to writing. It was not anything that can be proved other than it just bothers me that they're misleading this guy. I certainly understand that. But the point that I would make is that I had a question, and coming in with a fresh look at this, not being Mr. Robinson or Mr. McCabe, I looked and said, how does Mr. McCabe hold on to the right to have the Court look at the district court's vacating of the plea and then get back to the original plea? He never addresses that in his appeal at all. I think he never gets back to that point because he never addresses the fact that Mr. Lanier engaged in criminal conduct, completely vacating any plea agreement, whether it had the right term or wrong term in it. So I don't even think he gets back to that first plea agreement because he doesn't even get over the middle hurdle, which he reserved as an appellate issue. He doesn't even address it in his appeal because there's nothing to address. Clearly, Mr. Lanier engaged in new criminal conduct. The evidence was overwhelming. It's not before us, is it? It is before you to the extent that the Court should say, how do you get back to that first plea agreement, Mr. McCabe? Your client --- Well, the government didn't say it wasn't going to enforce the plea agreement. The government entered into a second plea agreement. That's the plea agreement under which Mr. Lanier pled guilty and reserved his right and reserved it on two issues. First, he would have to show that the Court erred in vacating the original plea agreement, which he doesn't do, and therefore we're left with a second plea agreement. Secondly, he does address this other issue, which we're talking about here, but I don't even know if the Court needs to get to that if he hasn't shown the Court erred in vacating the plea, which I don't think he does if he doesn't address it at all. But in this particular case, I agree with the Court. In the best of all possible worlds, it should have been a term which was up front, and it should have been a term in which the government said, you'll get no additional substantial assistance. You've received your full benefit. We're hoping for the best. That would have been good. But it's not an enforceable term. It didn't amount to anything, and therefore I don't know that it necessarily obligates the government to bring the 5k motion. I don't think it does. And I think the Pacheco-Assuno case, which is a case that looks at what it is that somebody does, or the Burroughs case, which talks about an individual who helped in the arrest of other defendants, at that point the Court determined because the government didn't bring the motion, there's no showing of unconstitutional motive, there's no showing that the government acted in bad faith, the Court in one sense, the defendant didn't make the substantial showing that the government acted in bad faith or had an unconstitutional motive, and neither one of those is present here. That's what Mr. McCabe does not address in his appeal, because there is no showing. His own attorney at the time, Mr. Hall, says, you're right, there was never a promise between the parties. The only person that's alleging that is, of course, Mr. Lanier, and you'd have to go back all the way to the front end before the plea in May of 2001 to look at the times they were meeting when it could have even been a discussion. That was in March. But there's no allegation that there was any discussion, and certainly something like that would have had to have been put into the plea agreement if it was something that the parties had agreed to, because the plea agreement says very clearly, and I'm talking about the May 2001 plea agreement, it says very clearly this plea contains all the terms of the plea agreement and can only be modified in writing, and that's the term that is in the plea agreement, the May plea agreement. Any additional questions? Thank you. If I may, reliance upon Wade is a second flip-flop. The government clearly stated through Mr. Robinson at the time of the hearing on this motion that the government was not relying upon, upon Wade, and indicated as much to the district court. Now, when Mr. Robinson specifically states that, the district court is not going to I do not wish to rely upon Wade, and that's set forth on page 22 of Appellant's opening brief. The exact quote is, what the government wants to rest its case upon is that there was an agreement with Mr. Lanier. We scrupulously abided by the terms of that agreement, and to the extent that the court finds that there was bad faith on the part of the government, I do not want to predicate my argument upon Wade. And yet that's the first argument in their responsive brief. It makes no difference, because Wade is only operative where there is no impingement upon a constitutional right. Here I am asserting that misleading the defendant, even if there was no agreement in the manner that the court has indicated, was a violation of due process. Now, as to how we get here, evidently Mr. Coghlan did not read the record extensively. It's set forth in the brief, that is, that the appellant, and this appears on page nine of Appellant's opening brief. Appellant asserted that the district court's ruling sustaining the government's position was an error because the government had failed to prove that Appellant conducted or attempted to conduct a financial transaction involving the proceeds of specified unlawful activity with the intent to promote the carrying on of the specified unlawful activity as required to constitute a violation of the federal money laundering statute, 18 U.S.C., section 1956, as the district court had previously ruled. That's set forth in the excerpt of clerk's record, 49 to 51. That's how we get here. All right. Mr. McCabe, your time's up. Thank you. So thank you very much. All right. U.S. v. Lanier is submitted. The next two cases, U.S. v. Chavez-Orozco and U.S. v. Tomlinson are submitted on the briefs, as well as U.S. v. Bailey, and we'll take up U.S. v. Bravo-Musquiz.
judges: Hug, T.G. Nelson, Wardlaw